```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 -------------------------------X
 FELIX VARDANYAN

         Plaintiff,                    MEMORANDUM AND ORDER

    -against-                          Civil Action No.
                                       CV-06-2243 (DGT)
 CLOSE-UP INTERNATIONAL, INC.,
 MIKHAIL SHEYDIN and NATALIA
 GENEM,

         Defendants.

 -------------------------------X
```

Trager, J:

On May 16, 2006, plaintiff Felix Vardanyan ("Vardanyan" or "plaintiff") brought this suit against defendants Close-Up International, Inc. ("Close-Up"), Mikhail Sheydin ("Sheydin") and Natalia Ganem ("Ganem") (collectively "defendants"). Plaintiff claims that he is the current owner of shares in Close-Up ("the Abramov shares") that were originally owned by Vadim Abramov ("Abramov"), one of the initial investors in Close-Up. Plaintiff is suing in this diversity action on his own behalf to recover money that is allegedly owed by defendants for injuries to Abramov as an investor and shareholder in Close-Up.

Defendants now move for summary judgment against plaintiff. Defendants maintain that Abramov's transfer of his shares in Close-Up to plaintiff is void, because the transfer of shares in this closely-held corporation is prohibited without the consent of all shareholders. Defendants, therefore, argue that plaintiff

has no standing to bring this suit.

Defendants are correct. As discussed more fully below, Sheydin, Ganem and Abramov reached an agreement in April 2004 as the three shareholders in Close-Up to prohibit the transfer of the Abramov shares without the written consent of the other shareholders. These restrictions are enforceable under New York law. Therefore, any agreement that purported to transfer Abramov's interest in Close-Up to Vardanyan is void. Because the transfer is void, plaintiff has no standing to bring this suit. Accordingly, it must be dismissed.

**Facts and Procedural Background**

Defendant Close-Up is a corporation incorporated and operating under the laws of the State of New York. Close-Up's primary business is the licensing and distribution of Russian-language motion pictures in the United States. Since the time of Close-Up's formation in January 2000, it has been a close corporation with three shareholders: Abramov (who initially owned 40% of shares); Sheydin (who initially owned 50% of shares); and Ganem (who initially owned 10% of shares). Sheydin and Ganem control the day-to-day operations of Close-Up. At the time of formation, Ganem approached Abramov to help fund the start-up of the business. Abramov provided initial investment funds of approximately $180,000 and some later investments, and he has

also "acted as [Close-Up's] representative in Moscow, Russia, and other cities as necessary." Deposition of Vadim Abramov, July 27, 2007 ("Abramov Dep.") 7:14-22; 8:9-17.

Abramov apparently first indicated to the other Close-Up shareholders that he was interested in pulling his finances out of Close-Up and selling his shares in "late 2003." Id. 13:13-23. Abramov engaged in unsuccessful negotiations to sell these shares with at least two investors sometime in late 2003 or early 2004. Id. 14:1-16:3. One of these potential investors was Joseph Berov ("Berov"). Berov at the time was also engaged in litigation with Close-Up, having been sued for copyright infringement of Close-Up's protected works. See Close-Up International, Inc. v. Berov, No. 02-CV-2363 (DGT) (E.D.N.Y. Nov. 13, 2007). As explained below, Berov was ultimately responsible for arranging and brokering the deal that purported to transfer Abramov's shares to Vardanyan in exchange for plaintiff's filing of this lawsuit. See Abramov Dep. 19:2-22:5.

After Abramov began discussions to sell his shares, the other two Close-Up shareholders sought to place some restrictions on Abramov's ability to transfer his shares to an outside investor. On or about April 14, 2004, Ganem and Sheydin, acting as Close-Up's Board of Directors, passed a resolution stating that no sale or transfer of Close-Up shares "can be made by any shareholders without written permission from the rest of

3

shareholders." Sheydin Aff. Ex. B. The resolution also stated that "[f]irst right for purchase of any shares from any shareholder should always belong to the Corporation or other shareholders of the Corporation." Id.

In addition, on or about April 22, 2004, the three shareholders held a joint conference call to discussion Abramov's interest in selling his shares. It is undisputed that Sheydin, Ganem and Abramov reached an oral agreement that Abramov would not sell his shares without the other shareholders' consent. See Abramov Dep. 17:19-18:5; Sheydin Aff. ¶ 12; Ganem Aff. ¶ 7. Sheydin and Ganem state that they reduced this agreement to writing, signed it and faxed it to Abramov, who returned it with his signature. Sheydin Aff. ¶ 12; Ganem Aff. ¶ 7. Defendants have also submitted a written agreement with the signatures of all three shareholders and header information indicating that the document was faxed between Close-Up and a Russian address. Sheydin Aff. Ex. C. Abramov stated at his sworn deposition that he did not remember whether this oral agreement was reduced to writing, but that it was "possible" a written agreement existed. Abramov Dep. 18:6-20.

Plaintiff argues that Abramov never signed a written agreement and that the submitted document is a fabrication. See Berkovich Decl. ¶¶ 12-13. But Abramov's sworn deposition testimony – that he made an oral agreement not to sell his shares

without written permission of the other shareholders, and that he does not remember whether he signed a written document confirming that agreement – does not conflict with the testimony and evidence that defendants have submitted about the terms of that agreement. Therefore, even when construed in the light most favorable for the plaintiff, the evidence is plainly sufficient to show that an oral and subsequently written agreement exists between the three shareholders to require written permission before the sale of the Abramov shares.

The only evidence plaintiff has offered to support the fabrication claim is the testimony of plaintiff's counsel Alexander Berkovich ("Berkovich") that Abramov previously denied that a written agreement existed. See Berkovich Decl. ¶¶ 16-19. Berkovich's personal recollections about his conversations with a third-party witness are plainly inadmissible hearsay when offered, as here, for the purported truth of the statements that Abramov allegedly made in those prior conversations. See Santos v. Murdock, 243 F.3d 681, 684 (2d Cir. 2001) ("Prior inconsistent statements are generally admissible for impeachment purposes only, and are inadmissible hearsay for substantive purposes unless they were made at a trial, hearing, or other proceeding, or in a deposition.") (internal quotations and citations omitted). Therefore, Berkovich's claim that Abramov previously told him that no agreement existed is insufficient to create a

5

triable question of fact on this issue.  See H. Sand & Co. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991) ("[H]earsay testimony that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.") (internal quotation marks and citations omitted); Santos v. Murdock, 243 F.3d at 683 (finding that affidavits containing inadmissible evidence do not create a material issue of fact sufficient to defeat a motion for summary judgment); Payne v. Huntington Union Free School Dist., 219 F. Supp. 2d 273, 279 (E.D.N.Y. 2002) (explaining that a court cannot rely on hearsay or "a bald assertion of an unsubstantiated fact" when considering a motion for summary judgment).

Some four and a half months following this shareholder agreement, on September 2, 2004, Abramov reached and signed an agreement with Sheydin to sell Abramov's 40% stake in the corporation to Sheydin for $200,000.  See Sheydin Aff. ¶ 14 & Ex. D; Abramov Dep. 16:7-16.  Pursuant to this agreement, Sheydin made an initial payment of $20,000 in exchange for 10% of Abramov's shares.  Sheydin Aff. ¶ 14; Abramov Dep. 17:8-10.  The written agreement provided that the full payments to Abramov would be completed within twelve months.  Sheydin Aff. Ex. D.

Sheydin states that he "was unable to complete the purchase due to business losses arising from continued piracy in the marketplace, litigation expenses and related business setbacks."

Sheydin Aff. ¶ 14. However, Sheydin also claims that he and Abramov agreed to an extension of the purchase agreement until at least September 2006. Id. Abramov has acknowledged that he had a "verbal agreement" to extend his contract with Sheydin to an unspecified date. Abramov Dep. 17:11-18. Other than the initial $20,000, Sheydin has made no additional payments to Abramov pursuant to this agreement.

At some later date, Abramov and Berov resumed their conversations about the Close-Up shares. Abramov Dep. 19:2-17. Abramov and Berov reached a deal whereby Abramov agreed to transfer his Close-Up shares to Vardanyan. In exchange, Abramov would receive 20% of any compensation that plaintiff could get through litigation with Close-Up. Abramov Dep. 19:23-21:15. This agreement, which was drafted and brokered by Berov, was signed by Abramov and Vardanyan on November 30, 2005. See Abramov Dep. 22:6-23:9; Berkovich Decl. Ex. 1.

Subsequently, on May 16, 2006, plaintiff filed this action against defendants for causes of action including corporate misconduct, fraud, civil conspiracy, conversion, misappropriation, breach of fiduciary duty, unjust enrichment and accounting violations. Defendants state that the filing of this complaint was the first time that they learned of the agreement between Abramov and Vardanyan, and that Vardanyan never communicated with defendants in any fashion prior to initiating

7

this suit.  Sheydin Aff. ¶ 15.  In their June 20, 2006 Answer, defendants raised a series of affirmative defenses, including that the purported agreement between Abramov and Vardanyan was void due to restrictions attached to the transfer of the Close-Up shares.  The defendants have now made those claims the basis of the current motion for summary judgment, which argues that the transfer of the Abramov shares is void and, therefore, plaintiff has no standing to bring this suit.

**Discussion**

**(1)**

**Shareholders' agreement to require shareholder consent before transfer of the Abramov shares is enforceable.**

As already noted, the record evidence is sufficient to show that Abramov, Sheydin and Ganem reached an agreement in April 2004 requiring the consent of the other shareholders before Abramov could transfer his shares in Close-Up.  Therefore, the question is whether these limitations on stock transfer are enforceable under New York law, and whether they would void the deal between Abramov and Vardanyan.

The parties agree that "[t]he general rule in New York is that a restraint on the alienation of corporate stock is enforceable so long as it 'effectuates a lawful purpose, is reasonable, and is in accord with public policy.'"  Benson v. RMJ

Sec. Corp., 683 F. Supp. 359, 371 (S.D.N.Y. 1988) (quoting Levey v. Saphier, 54 A.D.2d 959, 960, 388 N.Y.S.2d 644, 645 (2d Dep't 1976)). Restrictions on the transfer of stock are a common feature of closely-held corporations, because these restrictions are critical to protecting the day-to-day operations of the close corporation. See Sulkow v. Crosstown Apparel, Inc., 807 F.2d 33, 37 (2d Cir. 1986) (noting that "[l]imitations on the transfer of stock in close corporations are common"); Allen v. Biltmore Tissue Corp., 2 N.Y.2d 534, 543, 141 N.E.2d 812, 816-17, 161 N.Y.S.2d 418, 424 (1957) (explaining use of restrictions on transfer of stock to protect management of close corporation from outside influence); 18 Am. Jur. 2d Corp. § 38 (2006) (noting that characteristics of close corporation include "certain restrictions on the transfer of stock"). In this case, Close-Up is a close corporation with three shareholders, two of whom (Sheydin and Ganem) run the day-to-day operations of the business.

Moreover, Close-Up's business partners specifically rely on the trustworthiness of the Close-Up shareholders. Close-Up has submitted evidence of concerns raised by Krupniy Plan, a company described as the "largest and most important licensor" of the Russian-language films that are distributed by Close-Up in the United States. Ganem Aff. ¶ 10. On April 16, 2004, the General Director of Krupniy Plan sent a letter to Ganem warning that

9

Abramov's shares must be sold to a trustworthy party so that the "shady practices" of Berov and another party would not "repeat." Ganem Aff. ¶ 10 & Ex. E.  The Krupniy Plan letter also reminded Ganem that "the guarantee of trustworthiness of the partners of Close-Up International Corporation was an indispensable condition of transferring the exclusive rights to the Films to your company on a long-term basis."  Ganem Aff. Ex. E.  Defendants have shown that the reputation of Close-Up's shareholders is critical to its future business.  Therefore, so long as defendants can show that any restraints on stock transfer were lawful and reasonable, those restraints should be enforced to protect the corporation.

It is also relevant that the restrictions under review here are found in a shareholder agreement that was reached by all three Close-Up shareholders.  The New York Court of Appeals has instructed that "[a]s a general rule, courts must enforce shareholder agreements according to their terms.  Such agreements avoid costly, lengthy litigation and promote reliance, predictability and definitiveness in relationships among shareholders in close corporations."  In re Penepent Corp., Inc., 96 N.Y.2d 186, 192, 750 N.E.2d 47, 50, 726 N.Y.S.2d 345, 348 (2001) (internal quotations and citations omitted).  See also Rafe v. Hinden, 29 A.D.2d 481, 483, 288 N.Y.S.2d 662, 663-64 (2d Dep't 1968) ("A restriction on the alienation of stock made between all the stockholders of a corporation may be enforced, if

10

reasonable, even though it is not contained in the certificate of incorporation or the by-laws."). Because this shareholder agreement was a mutual contract reached between Sheydin, Ganem and Abramov, it will be construed in a manner that favors its enforcement if possible.

Plaintiff, however, maintains that this shareholder agreement is unenforceable under New York law. Plaintiff relies heavily on Benson v. RMJ Sec. Corp., 683 F. Supp. 359 (S.D.N.Y. 1988), even though Benson actually upheld a shareholder agreement to restrict the transfer of shares. See id. at 373. Benson, however, cited the 1968 case of Rafe v. Hinden, in which

> the Appellate Division declared unenforceable an agreement between two shareholders providing that the shares held by each of them were transferable only to the other, and requiring written permission of the other before any transfer to a third party was permitted. [Rafe, 29 A.D.2d] at 484-85, 288 N.Y.S.2d at 665. The agreement did not set a price at which the defendant was required to purchase, no time limit was set for the defendant to exercise his option to purchase, and there was nothing to prevent the defendant from unreasonably withholding his consent from a sale to a third party. Id. at 483, 288 N.Y.S.2d at 664. The court declared the provision illegal because it "render[ed] the sale of the plaintiff's stock impossible to anyone except to the individual defendant at whatever price he wishe[d] to pay." Id. at 485, 288 N.Y.S.2d at 666.

Benson, 683 F. Supp. at 372. Based on this discussion, plaintiff claims that the subject shareholder agreement is unenforceable because it did not set a price at which the defendants were required to purchase the Abramov shares; there was no time limit for exercising the option to purchase; and there was nothing in

11

the agreement to prevent the defendants from unreasonably withholding their consent from a sale to a third party.

It is certainly true, as stated in the seminal case of <u>Allen v. Biltmore Tissue Corp.</u>, 2 N.Y.2d 534, 141 N.E.2d 812, 161 N.Y.S.2d 418 (1957), that absolute prohibitions against transferability of shares are unlawful in New York. Therefore, a restriction that "render[ed] the sale of the stock impossible to anyone except to the corporation at whatever price it wished to pay" should be struck down as illegal. <u>Id.</u> at 542, 141 N.E.2d at 816, 161 N.Y.S.2d at 423. However, restrictions on the transfer of the shares of a closely-held corporation are "considered to be reasonable [where] they do not represent an 'effective prohibition against transferability,' but merely limit the group to whom the shares may be transferred." <u>In re Gusman</u>, 178 A.D.2d 597, 598, 577 N.Y.S.2d 664, 666 (2d Dep't 1991) (quoting <u>Allen v. Biltmore Tissue Corp.</u>, 2 N.Y.2d at 542, 141 N.E.2d at 816, 161 N.Y.S.2d at 423). Under such circumstances, the relevant question is whether restrictions on transferring shares in a closely-held corporation are "reasonable in light of the circumstances and the purposes sought to be accomplished." <u>Benson</u>, 683 F. Supp. at 373 (citing <u>Levey v. Saphier</u>, 54 A.D.2d at 960, 388 N.Y.S.2d at 645).

Under this analysis, the restrictions in the April 22, 2004 shareholder agreement are reasonable. First, plaintiff claims

that this agreement is unenforceable because it fails to set a price at which the defendants were required to purchase the Abramov shares. But the shareholder agreement clearly states that "Vadim Abramov is ready to sell his shares in the amount of $200,000." Sheydin Aff. Ex. C. This value appears reasonable in light of the investment that Abramov made in Close-Up. This price was ultimately the basis for the September 2, 2004 sale agreement between Abramov and Sheydin. Therefore, plaintiff cannot reasonably claim that the shareholder agreement failed to set a reasonable value for the Abramov shares. The purpose of the valuation requirement is to assure a predictable price for the sale of shares in a close corporation that may not be subject to an "easily ascertainable market value." Allen v. Biltmore Tissue, 2 N.Y.2d at 542-43, 141 N.E.2d at 816, 161 N.Y.S.2d at 424. The language in the Close-Up shareholder agreement is sufficient to meet that requirement.

Second, plaintiff claims that the agreement is unenforceable because there was no set time limit for defendants to exercise their option to purchase. But the shareholder agreement must be examined as a whole. The agreement also states that "[i]n the event the corporation or its co-owners are unable to buy these shares, Mikhail Sheydin and Natalia Genem shall undertake all necessary steps to find a buyer satisfactory for the corporation as a co-owner or an investor." Sheydin Aff. Ex. C. Therefore,

although the agreement fails to set forth a definitive time limit, it does include a requirement that defendants take "all necessary steps" to find a reasonable buyer. Abramov could rely on this language in the agreement if Sheydin and Ganem failed to purchase his shares within a reasonable time period.[1] Under the circumstances, this provision appears to have been a fair and mutually limiting requirement that should not render the shareholder agreement unenforceable.

Third, plaintiff claims that there was nothing in this agreement to prevent defendants from unreasonably withholding their consent to the transfer of the Abramov shares to a third party. However, as just stated, the agreement in fact included a clause requiring defendants to take "all necessary steps" to find a reasonable buyer. This clause can be interpreted as a contractual measure prohibiting defendants from unreasonably withholding their consent. Therefore, this agreement cannot be read to give defendants an "arbitrary power to forbid a transfer of the shares of stock" that would render this agreement unenforceable. See Rafe, 29 A.D.2d at 484, 288 N.Y.S.2d at 665 (citations omitted). Instead, this shareholder agreement

---

[1] As noted, Abramov did in fact reach a purchase agreement with Sheydin in September 2004. The September 2004 agreement included a twelve-month deadline for completing the purchase, and the evidence indicates that Abramov extended that deadline when Sheydin could not immediately perform. There is no evidence that Abramov asked defendants to find a new, reasonable purchaser for his remaining shares at any time.

14

includes valid protections for Abramov, even though Abramov does not appear to have invoked those protections against defendants.

Taken as a whole, the shareholder agreement is not an absolute prohibition against the transfer of the Abramov shares. On the contrary, this agreement merely limits the universe of buyers for the shares, in order to protect the interests and management of the corporation. The agreement gives the corporation and its current shareholders a right of first refusal, which is commonly upheld as a reasonable restriction on transferability. See Benson, 683 F. Supp. at 371. The agreement sets a reasonable value for the Abramov shares. And the agreement requires defendants to search for and identify a reasonable purchaser who is acceptable to the closely-held corporation, thereby preventing the other shareholders from arbitrarily and unreasonably withholding consent to a sale. Cf. Rafe, 29 A.D.2d at 484, 288 N.Y.S.2d at 665. Therefore, this agreement creates reasonable restrictions on transferability that are enforceable under New York law.

Moreover, defendants cannot be faulted for enforcing this agreement against plaintiff who, according to Abramov's deposition, is no more than a straw man for Berov, the party who actually negotiated and drafted the deal for Abramov's shares in Close-Up. As already noted, Berov was specifically named by Close-Up's business partners as the reason for requiring

15

shareholder permission before the Abramov shares could be transferred.  See Ganem Aff. Ex. E.

In short, the requirement that Abramov receive the written consent of Sheydin and Ganem before transferring his shares in Close-Up is enforceable.  Abramov never sought defendants' consent before transferring his shares to plaintiff.  Defendants have refused to grant that consent, and for good reason.  Therefore, the November 30, 2005 agreement purporting to transfer the Abramov shares to plaintiff is void.[2]

Defendants also argue that the stock transfer is void under the April 14, 2004 Board Resolution, see Sheydin Aff. Ex. B, and the corporation's general by-laws, see id. Ex. A.  For the reasons stated above, the transfer of the Abramov shares is void under the shareholder agreement and, therefore, there is no need to reach the merits of defendants' other arguments.[3]

---

[2] Plaintiff argues that he should be given "equitable rights" in the Abramov shares if the transfer was in violation of enforceable corporate agreements.  This argument, which is unsupported by any legal citation, clearly has no merit.  In any event, under the facts in the record, equity supports voiding the transfer agreement, not giving plaintiff any rights in Close-Up.

[3] It should be noted that the April 14, 2004 Board resolution, although similar to the April 22, 2004 shareholder agreement, lacks some of the protections for Abramov that are included in the shareholder agreement.  The Board resolution requires written permission from all shareholders before any transfer of Close-Up stock, but does not require that the remaining shareholders make any effort to identify a reasonable purchaser.  The resolution also fails to set any formula for pricing the shares in such a purchase.  Therefore, this resolution appears closer to the type of outright prohibition on

**(2)**

**Plaintiff has no standing to bring this suit.**

Because the transfer of the Abramov shares has been voided, plaintiff has no rights in Close-Up or its shares. Plaintiff, who had no contact with defendants before filing this suit, also has no contractual or fiduciary relationship with defendants. Therefore, plaintiff can make no claims that he has been injured by defendants. Instead, all of the causes of action stated in plaintiff's complaint allege claims based on Abramov's corporate and contractual relationships with defendants. Because plaintiff has not acquired Abramov's interest in any of those relationships, he cannot bring the claims on his own behalf. Accordingly, he has no standing to maintain this suit.

Plaintiff argues in the alternative that, even if he does not own the Close-Up shares, Abramov has separately assigned plaintiff the right to sue defendants on Abramov's behalf. Pl.'s Br. at 17-18. Plaintiff provides no legal support for this

---

transfer that is impermissible under New York law.
　　In addition, the passage of this resolution potentially implicates questions about whether Ganem and Sheydin, acting as the Close-Up Board of Directors, properly enacted this resolution pursuant to the corporation's by-laws, as well as whether Ganem and Sheydin, as majority shareholders, had any fiduciary duty to Abramov as a minority shareholder in this closely-held corporation. See 14A N.Y. Jur. 2d § 806 ("A shareholder in a close corporation stands in a fiduciary relationship to other shareholders, and accordingly, must deal fairly, honestly and openly with the corporation and fellow stockholders."). However, because these issues were not briefed by the parties, they will not be addressed here.

claim, because none exists.  Suffice it to say that "'the general prohibition on a litigant's raising another person's legal rights'" is a basic tenet of the law of standing.  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).[4]

---

[4] Moreover, the only consideration given by plaintiff in exchange for the Abramov shares was a promise to sue Close-Up for the money allegedly owed to Abramov.  See Abramov Dep. 18:24-21:15; Berkovich Decl. Ex. 1.  This arrangement bears all of the earmarks of champerty.  See 18 N.Y. Jur. 2d Champerty and Maintenance § 1 (defining champerty as "the unlawful maintenance of a suit in consideration of a bargain for some part of the thing involved"); Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 94 N.Y.2d 726, 733, 731 N.E.2d 581, 585, 709 N.Y.S.2d 865, 869 (2000) (explaining New York law of champerty).

## Conclusion

In short, plaintiff lacks standing to bring this suit based on the purported transfer of the Abramov shares, and he can claim no injury from defendants. Therefore, he has no standing to bring this suit. Accordingly, defendants' motion for summary judgment is granted, and this suit is dismissed.[5] The Clerk of the Court is directed to close the case.


Dated: Brooklyn, New York
       November 30, 2007

                                    SO ORDERED:


                                    _____/s/_____
                                    David G. Trager
                                    United States District Judge

---

[5] Plaintiff has also made a motion for pre-judgment attachment against defendants. That motion is dismissed as moot.